08 CV 5379

PATTERSON BELKNAP WEBB & TYLER LLP
Philip R. Forlenza
Nicholas T. Trefonas
Laura J. Wood

**JUDGE BUCHWALD**

1133 Avenue of the Americas
New York, New York 10036-6710
Telephone: (212) 336-2000
Attorneys for Defendants
Thelen Reid Brown Raysman & Steiner LLP and David R. Ritchie

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



RECEIVED
JUN 1 2 2008
U.S.D.C. S.D. N.Y.
CASHIERS

-----------------------------------------------------------X

E-SMART TECHNOLOGIES INC., IVI
SMART TECHNOLOGIES, INC. AND
BIOSENSOR LLC,

      Plaintiffs,

           v.

THELEN REID BROWN RAYSMAN &
STEINER LLP and DAVID R. RITCHIE,

      Defendants.

      :
      :    08 CV _____
      :
      :
      :
      :    NOTICE OF REMOVAL TO
      :    FEDERAL COURT

-----------------------------------------------------------X

TO:    THE JUDGES FOR THE UNITED STATES DISTRICT
         COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

        Defendants Thelen Reid Brown Raysman & Steiner LLP ("Thelen") and David R.

Ritchie ("Ritchie") (collectively, "Defendants") respectfully show upon information and belief:

        1.     An action was commenced against Defendants in the Supreme Court of

the State of New York, County of New York on or about May 9, 2008, and Defendants were

served with the summons with notice on May 13, 2008, a copy of which is attached hereto as

Exhibit A. Defendants were served with the complaint on June 11, 2008, a copy of which is

attached hereto as Exhibit B. No further pleadings or proceedings have been had therein.

1727417v.1

2.    Based on the summons with notice and the complaint, it appears that the above-described action is a civil action of which this Court has original jurisdiction under the provisions of 28 U.S.C. § 1338, and is one that may be removed to this Court by Defendants pursuant to the provisions of 28 U.S.C. § 1441(a) and 28 U.S.C. § 1441(b).

3.    This case comes within this Court's original jurisdiction under 28 U.S.C. § 1338, and is therefore removable, because it necessarily depends for its resolution on substantial issues of federal patent law.

4.    Thelen was retained as Plaintiffs' patent counsel in 2004.  Ritchie, a Thelen partner based in the firm's San Jose, California office, was the partner in charge of Thelen's patent work for Plaintiffs.  Plaintiffs allege that Thelen handled all of Plaintiffs' intellectual property matters, and that Plaintiffs relied on Thelen to advise and represent them in relation to the protection of their technology assets.  (*See, e.g.,* Exhibit B, Complaint ¶ 16.)

5.    Plaintiffs' allegations relate directly to Defendants' patent work for Plaintiffs, and Plaintiffs' right to relief will necessarily depend on resolution of substantial questions arising under the patent laws of the United States.

6.    The determination of one or more of Plaintiffs' claims and their alleged damages will require the Court to consider and review the scope and breadth of a number of patent applications, including the claims of those applications, to determine issues relating to inventorship and the value of the patent applications.  In addition, the Court will be required to consider and evaluate the prosecution of those applications before the United States Patent and Trademark Office, including, but not limited to, the scope of the prior art and its possible effect on the scope of the claims that may issue from those applications.  In so doing, the Court will necessarily have to decide substantial questions of patent law.

-2-

WHEREFORE, Defendants request that the above action now pending against it in the Supreme Court of the State of New York, County of New York, be removed therefrom to this Court.

Dated:     June 12, 2008

Respectfully submitted,

PATTERSON BELKNAP WEBB & TYLER LLP

By: _____
Philip R. Forlenza
Michael J. Timmons
Laura J. Wood
    Attorneys for Defendants Thelen Reid Brown
    Raysman & Steiner LLP and David R. Ritchie
1133 Avenue of the Americas
New York, New York  10036-6710
Telephone:  (212) 336-2000
prforlenza@pbwt.com

TO:    JOEL CHERNOV, ESQ.
       BRIAN DUNEFSKY, ESQ.
       Dreier LLP
       499 Park Avenue
       New York, NY  10022
       (212) 328-6130

-3-

# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------ x

E-SMART TECHNOLOGIES INC., IVI
SMART TECHNOLOGIES, INC. and
BIOSENSOR LLC,

                        Plaintiffs,

              - against -

THELEN REID BROWN RAYSMAN &
STEINER, LLP (formerly THELEN REID &
PRIEST, LLP) and DAVID B. RITCHIE,

                      Defendants.

------------------------------------------------------ x

Plaintiffs designate New York
County as the place of trial.

Index No.:

**SUMMONS WITH NOTICE**

The basis of the venue is plaintiffs'
principal place of business.

Plaintiffs' principal place of
business:

526 West 26th Street
New York, New York 10001

County of New York

08601409

To the above-named defendants:

    YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a
copy of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance, on plaintiffs' attorneys within twenty (20) days of service of this summons, exclusive
of the day of service, or within thirty (30) days after service is complete if the Summons is not
personally delivered to you within the State of New York; and in case of your failure to appear or
answer, judgment will be taken against you by default for the relief demanded herein.

    Defendants' Addresses:

Thelen Reid Brown Raysman & Steiner, LLP
875 Third Avenue, 10th Floor
New York, New York 10022

David R. Ritchie
c/o Thelen Reid Brown Raysman & Steiner, LLP
225 West Santa Clara Street
Suite 1200
San Jose, CA 95113

FILED
MAY 09 2008
COUNTY CLERK'S OFFICE
NEW YORK

{00353953.DOC;}

Notice:

The nature of this action is to recover damages in the amount of $100 million, together with interest and attorneys' fees, as a result of (i) defendants' legal malpractice; (ii) defendants' breach of fiduciary duty; (iii) defendants' aiding and abetting breaches of fiduciary duty; and (iii) defendants' breach of contract in connection with their representation of plaintiffs with respect to their intellectual property, confidential information and proprietary technology.

The relief sought is a money judgment.

Upon your failure to appear, judgment will be taken against you by default for the sum of $100 million, together with interest, attorneys' fees and the costs of this action.

Dated: New York, New York
        May 9, 2008

08601409

DREIER LLP

By: _____
    Joel A. Chernov
    499 Park Avenue
    New York, New York  1002
    (212) 328-6100

*Attorneys for Plaintiffs*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

E-SMART TECHNOLOGIES, INC., IVI SMART
TECHNOLOGIES, INC. and BIOSENSOR LLC,

Plaintiffs,

- against -

THELEN REID BROWN RAYSMAN & STEINER, LLP
(formerly THELEN REID & PRIEST, LLP) and DAVID B.
RITCHIE,

Defendants.

**SUMMONS WITH NOTICE**

DREIER LLP

Attorneys for Plaintiff

499 Park Avenue
New York, New York 10022
(212) 328-6100

{00354019.DOC;}

# Exhibit B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------x

E-SMART TECHNOLOGIES INC., IVI SMART
TECHNOLOGIES, INC. and BIOSENSOR LLC,

                Plaintiffs,

      -against-

THELEN REID BROWN RAYSMAN & STEINER LLP
(formerly THELEN REID & PRIEST LLP) and
DAVID B. RITCHIE,

                Defendants.

------------------------------------------------------------------x

Index No. 08601409

**COMPLAINT**

        Plaintiffs e-Smart Technologies, Inc. ("e-Smart"), IVI Smart Technologies, Inc.

("IVI"), and Biosensor LLC ("Biosensor" and, collectively with e-Smart and IVI, "Plaintiffs"),

by their attorneys, Dreier LLP, for their Complaint, allege as follows:

### Nature of Action

      1.    This is a case about the deceit, divided loyalties, and gross violations of

professional standards and fiduciary duties by Thelen Reid Brown Raysman & Steiner LLP,

formerly known as Thelen Reid & Priest LLP (collectively and individually, "Thelen") and

Thelen partner David B. Ritchie ("Ritchie").

      2.    As set forth below, Thelen and Ritchie persuaded Plaintiffs to entrust all of their

critical intellectual property matters to Thelen. Once Plaintiffs did so, however, Thelen failed to

provide competent and professional representation to Plaintiffs. Instead, Thelen violated its most

fundamental ethical and fiduciary obligations by simultaneously taking on as a client Michael

Gardiner ("Gardiner") -- a manufacturing consultant and nascent competitor of Plaintiffs.

Thelen then actively assisted Gardiner in the theft of Plaintiffs' intellectual property by providing

him with access to confidential information concerning Plaintiffs' intellectual property, helping him obtain contractual opportunities that belonged to Plaintiffs, and preparing or revising documents that transferred Plaintiffs' intellectual property and contracts to Gardiner and others working with him. Incredibly, Thelen billed Plaintiffs for the legal services that benefited Gardiner.

3.      Moreover, instead of helping Plaintiffs resolve these issues, Thelen compounded its misconduct by concealing its role in enabling Gardiner's theft, providing false information to Plaintiffs, and taking positions adverse to Plaintiffs and to the advantage of Gardiner.

4.      Thelen finally acknowledged its blatant conflict of interest, but only when *Gardiner's* counsel demanded that Thelen withdraw from litigation between e-Smart and Gardiner because Thelen had represented him. Even as it withdrew, however, Thelen continued to refuse to disclose to Plaintiffs the extent of its participation in the misappropriation of their intellectual property, now citing an "attorney-client relationship" with Gardiner.

5.      As a result of Thelen's disloyal actions, Gardiner was able to use Plaintiffs' own work product, technology and confidential information to create a competing business, transforming an e-Smart subcontractor into an aggressive and hostile competitor.

6.      As a result of Thelen's wrongful conduct, Plaintiffs (i) were forced to expend enormous time and money in litigation with Gardiner in efforts to recover their intellectual property and prevent its unauthorized use; (ii) were unable to deliver on existing contracts and lost revenues as a result; (iii) struggled to develop new business and financing in the face of Gardiner's claim that he could provide an identical biometric product; (iv) suffered severe damage to their reputation based on the claims and conduct of Gardiner; and (v) together with their shareholders, lost substantial value and equity as their market capitalization fell from

2

greater than $200 million to less than $20 million.  In fact, as a direct result of Thelen's wrongdoing, Plaintiffs' business operations were effectively derailed for well over a year.

## The Parties

7.      Plaintiff e-Smart is a Nevada corporation with its principal place of business located at 526 West 26th Street, New York, New York.

8.      Plaintiff IVI is a Delaware corporation and the parent of e-Smart.  Since 1999, IVI and e-Smart have been engaged in the business of designing, developing, marketing and maintaining biometric identification verification systems that verify a user's identity by comparing the user's fingerprint to stored reference data.

9.      Plaintiff Biosensor is a Hawaii limited liability corporation and a wholly owned subsidiary of IVI.  Biosensor was formed to design and manufacture biometric sensors for use in products manufactured by e-Smart and/or IVI.

10.     Defendant Thelen is a limited liability partnership engaged in the practice of law with offices in New York, California, Connecticut, New Jersey, the District of Columbia and overseas.

11.     Defendant Ritchie is a partner at Thelen and was the attorney in charge of Thelen's representation of Plaintiffs in their patent and intellectual property matters.

## Background

12.     Thelen represents to the general public that it has substantial expertise in the areas of patent and intellectual property law.  Specifically, Thelen represents that (i) it "understand[s] the necessity of devising comprehensive strategies to fully develop the value of IP portfolios;" (ii) "its seasoned attorneys are uniquely positioned to provide the comprehensive services and continuity of legal care increasingly required by these business leaders;" (iii) its "attorneys provide business leaders with the counsel and direction they need to anticipate risks and grow

3

revenues in order to successfully realize the value of their IP assets;" and (iv) its "clients can benefit the most from Thelen's coordinated and comprehensive approach . . . where we can assure that their IP rights will be protected in the best way to facilitate the long term commercial development and enforcement of their IP portfolio assets." Thelen also represents that:

> Properly identifying and fully developing the commercial value within a portfolio of IP assets can seem a complex and challenging process for any business. Yet it is a vital one, since the full value of the company's investment in its IP portfolio assets may be lost if its rights are not fully protected or if management is unaware of all the value-creation options available. . . . [O]ur clients can rely on the strength of our sound counsel in all aspects of developing the value of their IP portfolios.

*See* http://www.brownraysman.com/index.cfm?section=practice&practice_id=2888) (attached hereto as Exhibit A).

13.    Based on such claims and representations regarding its expertise, Plaintiffs engaged Thelen as one of its patent counsel beginning in 2004. At all relevant times, Ritchie was the Thelen partner in charge of Plaintiffs' patent and intellectual property matters. Ritchie represented to Plaintiffs that he would oversee all of their matters and that he possessed and would apply the necessary skill and expertise to protect their intellectual property. He then billed Plaintiffs at a rate in excess of $500.00 per hour for his services.

14.    It was agreed and understood that Thelen attorneys would report directly to Plaintiffs' chief executive officer, Mary Grace, keeping her informed regarding Plaintiffs' intellectual property matters, and from 2004 until the beginning of 2006, Thelen routinely did so.

**Thelen Persuades Plaintiffs To Transfer
All Intellectual Property Matters To It**

15.    Prior to 2006, Plaintiffs had used various law firms for their patent and intellectual property-related legal work. In or about January 2006, Ritchie persuaded Plaintiffs to transfer to him all of their other intellectual property matters. Ritchie claimed, *inter alia*, that

4

Fulbright & Jaworski had committed errors in connection with its representation of Plaintiffs, and that he possessed superior expertise and would serve as Plaintiffs' "trusted advisor."

16.    Having been persuaded to transfer all of its intellectual property matters to Thelen, e-Smart completely relied on Thelen to advise and represent it in relation to the protection of the company's most valuable asset: its technology. Plaintiffs provided highly confidential technical information to Thelen attorneys who, in turn, were charged with the protection of that information. Thelen, however, failed to do so.

17.    For example, after convincing e-Smart to transfer its intellectual property work based on its claims that errors were committed by Fulbright, Thelen failed to undertake any comprehensive review of e-Smart's patent portfolio or history of patent preparation and prosecution, failed to evaluate the extent of its patent assignments, failed to obtain assignments of patent applications that Thelen itself prepared, and failed to advise e-Smart that its assignments were incomplete.

**Thelen Fails To Reveal Conflicts Of Interest Or Provide Adequate**
**Counsel In Connection With Negotiations With Gardiner And A-Card**

18.    Thelen's negligence and breach of duty continued in early 2006, when Thelen purported to represent e-Smart in connection with its negotiations with Gardiner. e-Smart had entered into a tentative agreement with Gardiner pursuant to which he (and the company that he controlled, A-Card) would provide certain manufacturing services to e-Smart. Because Gardiner, in that manufacturing capacity, would obtain broad access to and physical possession of e-Smart's intellectual property and proprietary and confidential information, the protection of its intellectual property required an agreement which would prohibit the misappropriation of that technology.

5

19.   Thelen undertook to negotiate an agreement with Gardiner that would (i) prohibit Gardiner from using for his own purposes, misusing, disclosing, or in any way exploiting Plaintiffs' confidential information; and (ii) establish that e-Smart would be the rightful owner of any technology developed during the course of the manufacturing process.

20.   Thelen, however, failed to advise Plaintiffs that the conflict check conducted on Plaintiffs' new Gardiner/A-Card matter -- with Gardiner identified as the adverse party -- revealed two prior matters in which Thelen had represented Gardiner or a Gardiner entity. Upon information and belief, Thelen's own procedures required that Plaintiffs be so notified.

21.   Thelen then assigned the very same attorney who had the prior relationship with Gardiner -- an associate with less than three years of legal experience -- to negotiate and draft the agreement with Gardiner on behalf of e-Smart. Further, upon information and belief, Ritchie failed to supervise this associate. Plaintiffs ultimately consented to the terms of the agreement that Thelen drafted (the "Gardiner/A-Card Agreement") based on their belief that Thelen had applied its expertise and was acting competently and without conflict of interest.

22.   In fact, Thelen had not acted competently. The agreement failed to provide Plaintiffs with any meaningful protection for its existing proprietary information. Nor did it ensure that e-Smart would be the owner of any proprietary information developed in the manufacturing process. Most importantly, the agreement failed to provide any significant limits on Gardiner's ability to launch a competing business using e-Smart's own technology. As a result, Gardiner was able to use e-Smart's years of research and development and its confidential and proprietary information to launch his competing business.

6

**Thelen Improperly Represents Gardiner**
**While Simultaneously Representing Plaintiffs**

23.     Upon information and belief, by March 2006, Thelen was aware of Gardiner's efforts to misappropriate Plaintiffs' proprietary information.   Upon information and belief, Thelen also learned that Gardiner had induced Plaintiffs' lead inventor, Tamio Saito ("Saito") (who served as both an officer and director of Plaintiffs and was subject to both nondisclosure and noncompetition agreements with Plaintiffs) as well as other e-Smart engineers to assist him in these wrongful efforts to divert Plaintiffs' technology to Gardiner.

24.     Notwithstanding this knowledge, Thelen proceeded to provide legal services and assistance to Gardiner to the detriment of Plaintiffs.  Beginning in or around March 2006 and unbeknownst to Plaintiffs, Thelen entered into a separate attorney-client relationship with Gardiner and/or Saito.  In connection therewith, Thelen failed to perform a conflict check and obtained a retainer check from Gardiner, but concealed it by hiding it in a desk drawer.  Of course, any such conflict check would have disclosed that Gardiner was adverse to Plaintiffs. Next, in order to hide the work that it then was performing for Gardiner, Thelen failed to open any new matters or create new entries in its filing system in accordance with its normal procedure, instead keeping the work performed for Gardiner in files in the associate's office. Thelen also altered its practice of reporting to Plaintiffs' management.  To add insult to injury, Thelen then billed Plaintiffs for some or all of the services it performed for Gardiner.

**Thelen Improperly Diverts The Arakawa Patent To Gardiner**

25.     Before beginning its formal representation of Gardiner, Thelen had negotiated the assignment to Plaintiffs of a patent application relating to data encryption (the "Arakawa Patent").  All related documents, including the assignment from the inventor, were obtained, prepared, and filed by Thelen in February 2006.  In or about May of 2006, however, at the

7

direction of Gardiner and/or Saito, Thelen prepared a subsequent assignment of the Arakawa Patent transferring it to Aten -- a company owned and controlled by Gardiner. Thelen forwarded this new assignment to the inventor and obtained his signature.

26.    At no time did Thelen advise Plaintiffs' management that it was facilitating the transfer of the patent application from Plaintiffs to a Gardiner-controlled company. Instead, as noted above, it changed its reporting procedures, and excluded Plaintiffs' management from the communications regarding the "reassignment" of the Arakawa Patent.

27.    Ultimately, in June 2006, Ritchie acknowledged that the purported "reassignment" of the Arakawa patent was improper. In a letter to Saito dated July 12, 2006, Ritchie admitted that the purported reassignment was "not proper" given "your status with IVI Smart Technologies." Ritchie then added that the firm could not represent "Aten," the purported assignee, "without permission in writing from another officer of IVI . . ." and that Saito should seek "independent legal counsel" in respect to the reassignment issue.

**Thelen Improperly Transfers Plaintiffs' Contract**
**With John Hopkins University To Gardiner**

28.    Beginning around November 2005, Thelen negotiated a research agreement between Johns Hopkins University ("JHU") and Plaintiffs' subsidiary, Biosensor, relating to the development and testing of a particular biometric sensor. The project involved detailed design and configuration information developed by Saito for Plaintiffs, and was the subject of extensive discussions between Thelen and Saito, and extensive negotiations between Thelen and JHU's counsel.

29.    Discussions relating to the JHU-Biosensor agreement continued in 2006 and, in or about April 2006, a revised draft of the agreement was circulated. The draft agreement

8

contained confidential information developed by and for Plaintiffs, and Thelen billed all work relating to the negotiation of the agreement to Plaintiffs

30.     Notwithstanding, on or about May 17, 2006, however, Thelen changed the name of the contracting party in the draft agreement from Biosensor to a Gardiner-controlled entity called Polymerbio.

**Thelen Improperly Transfers Additional**
**e-Smart Patent Applications To Gardiner**

31.     On or about May 1, 2006, Thelen was preparing or had completed preparation of certain new patent applications for Plaintiffs based on information received from Saito and Plaintiffs' other engineers.   But, instead of filing the patent applications with appropriate assignments to Plaintiffs, Thelen handed over the physical applications to Gardiner or others acting in concert with him.  Thelen failed to advise Plaintiffs that it had provided these patent applications to Gardiner and those acting with him.  Thelen did, however, bill Plaintiffs for its legal work relating to the development of those applications.

32.     As a result of Thelen's actions, Gardiner was able to cause the applications to be filed for the benefit of entities under his control, and has since claimed ownership of the inventions described therein.

33.     Based on these actions, and as a direct result of Thelen's failure to perform any due diligence at the time it convinced e-Smart to rely exclusively on Thelen, Plaintiffs have been unable and/or significantly hampered in their ability to obtain the patent assignments to which they are entitled.

9

**Gardiner Threatens To Enter The Biometric**
**Business Unless Plaintiffs Meet His Demands**

34.    After Thelen undertook its representation of Gardiner and prepared and altered documents enabling Gardiner to obtain control of Plaintiffs' intellectual property and confidential information, Gardiner began taking other steps to launch a competing business. To that end, during May 2006, Gardiner incorporated an entity called ID Smart, arranged for the filing of the patent applications obtained from Thelen, and made arrangements to employ Saito and others that had been affiliated with e-Smart.

35.    In June 2006, Gardiner announced to e-Smart that he had his "own IP," had hired all of the e-Smart research and engineering staff, intended to produce a competing biometric product, and would manufacture for e-Smart only if his terms were met. Gardiner then marketed his supposed product aggressively, contacting prospective purchasers and appearing at industry trade shows with claims that he could provide a product with all of the capabilities of the e-Smart product.

**Thelen's Concealment And Continued Improper Conduct**

36.    During the period June through August 2006, e-Smart turned to Thelen to represent it in connection with its developing dispute with Gardiner and Saito. Ritchie himself purported to be taking steps to assist e-Smart in this regard, including arranging a meeting between all participants. Tellingly, the Thelen associate who had worked on both e-Smart's and Gardiner's matters told Ritchie that she was "uncomfortable" having a meeting to resolve the dispute, because she had been preparing patent applications for Gardiner and the entities he controlled.

37.    During this same period, Thelen concealed its actions on behalf of Gardiner. While Ritchie informed Plaintiffs of certain of Saito's efforts to transfer e-Smart's intellectual

10

property, he failed to disclose that it was Thelen that had prepared and provided Gardiner with the assignment of the Arakawa Patent. He also failed to disclose, *inter alia*, that:

- e-Smart's biometric sensor project had been diverted to Gardiner;

- e-Smart's patents applications had been delivered to Gardiner and/or Saito;

- Thelen failed to prepare or file for e-Smart applications relating to the inventions by Saito and other e-Smart employees and consultants and incorporated in patent applications delivered to Saito and/or Gardiner; and

- Saito and Gardiner had filed patent applications obtained from e-Smart on behalf of Gardiner and entities that he controlled.

38.    In addition, Thelen also falsely stated to Plaintiffs that patent applications had not been filed by Gardiner or Saito, because, according to Thelen, it had convinced Saito that it would violate his fiduciary duties as an officer and director of Plaintiffs.

39.    Although Thelen failed to disclose to Plaintiffs the extent to which it was facilitating Gardiner's misappropriation of Plaintiffs' information and technology, it did insist on payment of all of its outstanding invoices and even sought an additional payment for the future legal services that would have to be rendered to address Gardiner's misappropriation of Plaintiffs' technology. Plaintiffs made those payments, forwarding $200,000 in June to cover outstanding invoices of $150,000 and an additional $50,000 for work to be performed concerning Gardiner.

**Ritchie Persuades Plaintiffs To Let Thelen Handle
Litigation That Related To His Own Firm's Conduct**

40.    In September 2006, e-Smart and IVI sued Gardiner and others in the United States District Court for the Northern District of California to recover Plaintiffs' misappropriated property and to prevent its unauthorized use. Before filing that action, Plaintiffs' litigation counsel provided a copy of the complaint to Thelen for its review.

11

41.    Thelen attorneys confirmed the accuracy of the contents of the complaint against Gardiner, but did not disclose to Plaintiffs their knowledge of Gardiner's misappropriation of Plaintiffs' technology and/or their own participation in Gardiner's activities.

42.    Instead of informing Plaintiffs of the transfers of technology which it had facilitated, Thelen sought to conceal its culpability by taking control of the litigation and becoming "coordinating counsel." In fact, Ritchie persuaded Plaintiffs to retain Thelen as their lead counsel in the action against Gardiner, which they did in December 2006.

43.    After Thelen had filed its Notice of Appearance in the Gardiner litigation, Gardiner's counsel sent a letter to Thelen demanding that it withdraw, because of a conflict of interest arising from Thelen's concurrent representation of Gardiner. On January 31, 2007, Thelen withdrew as counsel for Plaintiffs.

44.    At or about the time of Thelen's withdrawal, Plaintiffs asked Thelen to explain its past services for Gardiner. Thelen refused to do so, stating that it had an attorney-client relationship with Gardiner.

45.    Thelen subsequently billed e-Smart more than $100,000 for the firm's work in connection with the Gardiner litigation.

46.    In addition, IVI has become embroiled in litigation commenced by Gardiner against it in the United States District Court for the Southern District of California, costing the company thousands of dollars in legal fees and expenses to date.

**Ritchie's Failures To Adequately Represent Plaintiffs**

47.    Throughout the entire period at issue, Ritchie was the partner in charge of Plaintiffs' patent matters and Plaintiffs relied on Ritchie to represent them diligently and competently. During the period January 2006 through January 2007, Ritchie failed to provide Plaintiffs with proper representation. To the contrary, he knowingly participated in actions that

facilitated Gardiner's misappropriation of Plaintiffs' proprietary technology, and failed to perform, conduct, oversee, review or adequately supervise other Thelen attorneys assigned to Plaintiffs' matters.

48.     In addition, during the period January 2006 through January 2007, Ritchie failed to represent Plaintiffs competently because he had knew or should have known that Saito was engaging in acts adverse to Plaintiffs, that Gardiner was attempting to obtain access to and control of Plaintiffs' technology, and that Thelen attorneys were engaged in conduct adverse to the interests of Plaintiffs, but took no steps to rectify such circumstances.

49.     As a direct and proximate result of Thelen and Ritchie's wrongful conduct, (i) Plaintiffs incurred substantial legal fees and costs, (ii) their proprietary technology was stolen, (iii) business opportunities were lost, (iv) production and delivery of their product was substantially delayed, (v) their receipt of income from their products was substantially and adversely affected, and (vi) they had to incur substantial costs to initiate and prosecute litigation to recover their stolen technology and prevent its misuse by Gardiner and others.

**First Cause of Action**
**(Breach of Fiduciary Duty)**

50.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

51.     At all relevant times, defendants had an attorney-client relationship with Plaintiffs. As a result, defendants owed Plaintiffs a duty to exercise due care and diligence to preserve and protect the confidential information received from Plaintiffs. Defendants also owed to Plaintiffs, among other things, duties of loyalty, good faith, trust, candor, and due care, which required them to avoid representing other clients with differing interests from Plaintiffs; to refrain from affirmatively assisting a third-party in taking a position detrimental and adverse to

13

Plaintiffs; and to refrain from disclosing confidences obtained from Plaintiffs. In addition, as fiduciaries, defendants had a duty to avoid acting in a manner detrimental to the business and property rights of Plaintiffs, including a duty to refrain from making knowing misrepresentations to Plaintiffs, from concealing information from Plaintiffs, and from making statements to Plaintiffs in reckless disregard for their truth and accuracy.

52.    By making misrepresentations to Plaintiffs, by concealing material information, by making statements in reckless disregard of their truth or accuracy, by disclosing Plaintiffs' confidential information to Gardiner, by concealing its adverse representation of Gardiner, and by assisting others to pursue objectives that directly conflicted with Plaintiffs' interests, defendants breached the obligations that they owed to Plaintiffs.

53.    These breaches of duty directly and proximately caused Plaintiffs to experience substantial delays in production of their product and their receipt of revenues, caused Plaintiffs to incur substantial expenses to address the misconduct of Gardiner and others, including the misconduct facilitated by defendants, and caused injury to the reputation and business relationships of Plaintiffs.

54.    As a result of defendant's breaches of their fiduciary obligations to Plaintiffs, (i) Thelen has forfeited any and all right to compensation for its services to Plaintiffs during the time period relevant to these claims and should disgorge all fees it has received from Plaintiffs; (ii) defendants are liable for the costs that Plaintiffs have incurred in litigations with Gardiner; and (iii) defendants are liable to Plaintiffs for consequential damages in an amount to be proven at trial, but believed to be in excess of one hundred million dollars, plus compensatory and punitive damages.

14

## Second Cause of Action
## (Legal Malpractice)

55.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

56.    By virtue of defendants' attorney-client relationship with Plaintiffs, defendants owed Plaintiffs a duty to exercise due care and diligence by taking reasonable steps to preserve and protect of the confidential information received from Plaintiffs.  Defendants also owed to Plaintiffs, among other things, duties of loyalty, good faith, trust, candor, and due care.  In particular, defendants had a duty to refrain from representing a client whose interests were adverse to Plaintiffs, to avoid and prevent the disclosure and misuse of Plaintiffs' confidential information, to refrain from accepting or engaging in any representation of another client which would interfere with its professional judgments or obligations and relationship to its existing clients, to refrain from assisting a third-party take a position detrimental and adverse to Plaintiffs, and from disclosing confidences obtained from Plaintiffs.

57.    Defendants held themselves out to Plaintiffs as possessing expertise in matters relating to intellectual property, and as being skilled and competent attorneys adhering to professional standards.

58.    Defendants failed to act with the requisite level of skill and competence in their representation of Plaintiffs and breached their duties to Plaintiffs by unreasonably acting in a manner detrimental to the business and property rights of Plaintiffs; by negligently, recklessly, or intentionally disclosing Plaintiffs' confidential information to Gardiner, by making knowing misrepresentations to Plaintiffs; by concealing material information from Plaintiffs that Plaintiffs had a right to learn; by making statements concerning Plaintiffs in reckless disregard for the truth

15

or accuracy of such statements; and by assisting third-parties to engage in actions adverse to Plaintiffs.

59.    Defendants' breaches of duty and failure to act with the requisite level of skill and competence in their representation of Plaintiffs directly and proximately caused Plaintiffs to experience substantial delays in production of their product and their receipt of revenues, caused Plaintiffs to incur substantial expenses in legal actions to address the conduct of Gardiner and others, including the misconduct facilitated by defendants, and caused injury to the reputation and business relationships of Plaintiffs.

60.    As a result of defendants' legal malpractice, (i) Thelen has forfeited any and all right to compensation for its services to Plaintiffs during the time period relevant to these claims and should disgorge all fees it has received from Plaintiffs; (ii) defendants are liable for the costs that Plaintiffs have incurred in litigations with Gardiner; and (iii) defendants are liable to Plaintiffs for consequential damages in an amount to be proven at trial, but believed to be in excess of one hundred million dollars, plus compensatory and punitive damages.

**Third Cause of Action**
**(Breach of Contract)**

61.    Plaintiffs repeat and allege the allegations set forth in paragraphs 1 through 49 as thought fully set for the herein.

62.    Plaintiffs and Thelen entered into a contract creating an attorney-client relationship between them. Pursuant to its contract with Plaintiffs, Thelen had an obligation to refrain from accepting representation of a client with interests adverse to Plaintiffs without at least asking for Plaintiffs' consent, to avoid and prevent disclosure and misuse of Plaintiffs' confidential information, to refrain from accepting or engaging in any representation of another client which would interfere with its professional judgments or obligations and relationship to

16

Plaintiffs, to refrain from assisting a third party take positions detrimental and adverse to Plaintiffs, and from disclosing confidences obtained from Plaintiffs.

63.    Thelen violated its contractual obligations to Plaintiffs by failing to act with the requisite level of skill and competence in its representation of Plaintiffs, by breaching its duties to Plaintiffs, by acting in a manner detrimental to the business and property rights of Plaintiffs, by disclosing Plaintiffs' confidential information to Gardiner, by making knowing misrepresentations to Plaintiffs, by concealing information from Plaintiffs, by making statements in reckless disregard for the truth and accuracy or such statement concerning Plaintiffs, and by assisting third parties in actions adverse to the interests of Plaintiffs.

64.    Plaintiffs have fully performed their obligations under their agreement with Thelen.

65.    Thelen's conduct as described herein constitutes a material breach of its contractual obligations to Plaintiffs.

66.    As a direct, foreseeable and proximate result of Thelen's breaches of its contractual obligations, its breaches of duty, and its failure to act with the requisite level of skill and competence in its representation of Plaintiffs, Plaintiffs experienced substantial delays in production of their product and their receipt of revenues; Plaintiffs incurred substantial expenses addressing the misconduct of Gardiner and others, including the misconduct facilitated by Thelen; and the reputation and business relationships of Plaintiffs were injured.

67.    As a result of Thelen's conduct, Thelen is liable to Plaintiffs for consequential damages in an amount to be proven at trial, but believed to be in excess of one hundred million dollars, plus compensatory damages.

### Fourth Cause of Action
### (Aiding & Abetting Breaches of Fiduciary Duty and Contract)

68.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

69.    Defendants, at all relevant times, had an attorney-client relationship with Plaintiffs.  As a result, defendants dealt directly with Plaintiffs' lead inventor, Saito, and with other engineers working on behalf of Plaintiffs.

70.    Defendants were aware that Saito served as both an officer and director of Plaintiffs, that he possessed fiduciary duties attendant to those relationships, and that he was subject to both nondisclosure and noncompetition agreements with Plaintiffs.

71.    Defendants were aware that Plaintiffs had expended substantial efforts and resources to protect their confidential information and intellectual property.  Plaintiffs had instructed defendants to take appropriate steps to protect their confidential information and intellectual property.

72.    Starting in no later than March 2006, defendants had knowledge and information that Saito was engaging in conduct that violated his contractual and fiduciary obligations to Plaintiffs.

73.    Defendants acted in breach of their obligations, and facilitated and assisted the misconduct of Saito, by failing to protect the business and property rights of Plaintiffs, by assisting and cooperating with Saito in actions that contravened his duties to Plaintiffs, and by failing to advise Plaintiffs of the actions taken by Saito in contravention of his contractual and fiduciary obligations to Plaintiffs.

74.    By virtue of the acts alleged herein, defendants knowingly participated and substantially assisted in Saito's breach of fiduciary and contractual duties owed to Plaintiffs.

18

75.    Defendants' aiding and abetting of Saito's breaches of fiduciary and contractual obligations caused damages to Plaintiffs in an amount to be proven at trial, but which are believed to be in excess of one hundred million dollars, plus compensatory and punitive damages.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against defendants as follows:

A.    On the First Cause of Action against defendants, (i) declaring that defendants have forfeited any and all right to compensation for its services to Plaintiffs during the time period relevant to these claims; (ii) directing that Thelen disgorge all fees it has received from Plaintiffs; (iii) awarding Plaintiffs the costs and expenses that they have incurred in litigations that have resulted as a result of Defendants' conduct; (iv) awarding Plaintiffs consequential damages in an amount to be proven at trial, but believed to be in excess of one hundred million dollars; and (v) awarding compensatory and punitive damages.

B.    On the Second Cause of Action against defendants, (i) declaring that defendants have forfeited any and all right to compensation for its services to Plaintiffs during the time period relevant to these claims; (ii) directing that Thelen disgorge all fees received from Plaintiffs; (iii) awarding Plaintiffs the costs and expenses that they have incurred in litigations that have resulted as a result of defendants' conduct; (iv) awarding Plaintiffs consequential damages in an amount to be proven at trial, but believed to be in excess of one hundred million dollars; and (v) awarding compensatory and punitive damages.

C.    On the Third Cause of Action against Thelen, (i) awarding Plaintiffs the costs and expenses that they have incurred in litigations that have resulted as a result of Thelen's conduct;

19

(ii) awarding Plaintiffs consequential damages in an amount to be proven at trial but believed to be in excess of one hundred million dollars; and (iii) awarding compensatory damages.

D.   On the Fourth Cause of Action against defendants, (i) awarding Plaintiffs the costs and expenses that they have incurred in litigations that have resulted as a result of defendants' conduct; (ii) awarding Plaintiffs consequential damages in an amount to be proven at trial, but believed to be in excess of one hundred million dollars; and (iii) awarding compensatory and punitive damages.

E.   Awarding Plaintiffs their costs, attorneys' fees, prejudgment interest and such other and additional relief as the Court deems just and proper.

Dated: New York, New York
   June 10, 2008

                    DREIER LLP

                    By: _____
                       Joel Chernov
                       Brian Dunefsky
                    499 Park Avenue
                    New York, New York, 10022
                    (212) 328-6100

                    *Attorneys for Plaintiffs*
                    *e-Smart Technologies, Inc., IVI Smart*
                    *Technologies, Inc. and Biosensor LLC*

20

# EXHIBIT A

English   |   Chinese

# Thelen Reid Brown Raysman & Steiner LLP
## Intellectual Property

Businesses involved in commercially developing their own intellectual property (IP) portfolio assets, and those relying on the use of IP assets owned by others, face many risks arising from the growing variety and complexity of IP assets, increasing global competition, and diversity in protections afforded IP rights in foreign markets.

In today's environment, businesses must assert greater control over those risks. The IP attorneys of Thelen Reid Brown Raysman & Steiner LLP understand the necessity of devising comprehensive strategies to fully develop the value of IP portfolios across asset classes and geographic markets, and of assuring the contract rights of our clients whose businesses depend on the permitted commercial development of another party's IP.

Thelen's seasoned attorneys are uniquely positioned to provide the comprehensive services and continuity of legal care increasingly required by these business leaders. Our IP attorneys collaboratively apply their respective experience in the areas of patents, trademarks, copyrights, trade secrets, and competition law.

Our clients benefit from our ability to offer both the focused experience of a boutique and the extensive multi-disciplinary resources of a full-service national firm. Thelen's attorneys provide business leaders with the counsel and direction they need to anticipate risks and grow revenues in order to successfully realize the value of their IP assets.

With experienced IP attorneys strategically located in major centers of commercial activity nationwide, we provide our clients with cost-effective legal service through seamless coordination between our offices coast-to-coast. Our IP attorneys are backed by the full multi-disciplinary resources of the firm, and can confidently handle any type of IP-related matter, in any jurisdiction, and at any stage in the growth and development of our clients' IP assets.

### Acquiring and Protecting IP Rights
The acquisition and protection of IP rights represents the initial-and perhaps most critical-stage in developing the full value of any company's portfolio of IP assets. It is at this stage that our clients can benefit the most from Thelen's coordinated and comprehensive approach, and where we can assure that their IP rights will be protected in the best way to facilitate the long-term commercial development and enforcement of their IP portfolio assets.

Using our collective experience in a team approach, Thelen provides forward-looking strategic counsel to clients across many industries regarding the types of protection available for a given technology or creative work. Where appropriate, we evaluate the benefits, costs, time considerations, and consequences of pursuing various combinations of protection that will best fit our clients' business objectives. Thelen's nationwide network of offices are seamlessly coordinated to provide integration of practice capabilities and achieve cost-effective services for our clients.

### Managing and Developing the Value of IP Rights and Assets
Properly identifying and fully developing the commercial value held within a portfolio of IP assets can seem a complex and challenging process for any business. Yet, it is a vital one, since the full value of a company's investment in its IP portfolio assets may be lost if its rights are not fully protected or if management is unaware of all the value-creation options available. A company's effectiveness in meeting these challenges reflects directly on its management, and failure can place the company at a competitive disadvantage.

Thelen's attorneys help our clients face these challenges by obtaining broad protection of their IP rights in ways that anticipate and facilitate the commercial development of those assets for maximum return, and provide our clients with the counseling and transactional services they need to manage and develop the value of their IP portfolio assets across the different classes of protection and in the various forms of economic activity in which they may appear.

We have found that an effective strategy often includes conducting comprehensive value audits of client IP portfolios, which can

Thelen Reid Brown Raysman & Steiner LLP, an International Law Firm

identify underutilized assets and uncover possible market opportunities. We are able to then suggest strategies for developing the marketability of these assets, and methods of gaining market access.

Thelen's attorneys also counsel companies seeking to incorporate into their business processes protected technology or other forms of IP owned by others, and represent these companies in negotiating various types of licensing and outsourcing arrangements.

The skilled attorneys of Thelen's IP practice combine their broad industry experience with the experience of their colleagues in the areas of business combinations and corporate finance, commercial transactions and contract law, international trade and competition law, and transactional tax issues. As a result, our clients can rely on the strength of our sound counsel in all aspects of developing the value of their IP portfolios.

Thelen's litigators also confidently enforce our clients' IP rights and access to IP-related markets across these key practice areas:

- Antitrust and Trade Regulation
- Entertainment and Media
- IP Litigation

- Patent Litigation
- Trade Secrets Litigation
- Trademark and Copyrights Litigation

To learn more about Thelen's Intellectual Property practice, please contact the following:

**Frederick L. Whitmer**
New York
Tel: 212.603.2074
fwhitmer@thelen.com

**Robert E. Krebs**
Silicon Valley
Tel: 408.282.1823
rkrebs@thelen.com

New York   San Francisco   Washington, DC   Los Angeles   Shanghai   London   Silicon Valley   Hartford   Northern NJ

Affiliated Sites >   www.constructionweblinks.com   |   www.technologylawupdate.com   |   www.climatelawupdate.com

Copyright © 2008 Thelen Reid Brown Raysman & Steiner LLP. All Rights Reserved.
Attorney Advertising Notice Terms of Use